**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SILUS M. VALSON,<br><br>                Plaintiff,<br><br>     v.<br><br>J. CLARK KELSO, et al.,<br><br>                Defendants. | Case No. 1:14-cv-01420-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED<br><br>(ECF NO. 15)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I. BACKGROUND

Silus M. Valson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on his First Amended Complaint ("FAC"), (ECF No. 9), which asserts a claim for violation of the Eighth Amendment against Defendants Matthew Cate and Marin Biter ("Defendants") based on knowingly providing Plaintiff and other prisoners with water containing elevated levels of arsenic.

Defendants moved to dismiss the complaint on August 5, 2016, on the ground that exhibits attached to the complaint contradict Plaintiff's allegations because they demonstrate that the water was not unsafe and did not in fact harm Plaintiff, and also on the ground that Defendants have qualified immunity. (ECF No. 15). Plaintiff opposed Defendants' motion on August 30, 2016. (ECF No. 18). Defendants filed a reply on September 6, 2016 (ECF No. 19).

This case is one of many filed by inmates of Kern Valley State Prison ("KVSP") following announcements that KVSP's water tested for higher levels of arsenic than permitted by

the EPA, per EPAs revision to permissible levels issued in 2001. Although KVSP took steps to treat the water, there were several years where the arsenic levels exceeded the revised standards. Plaintiff suffered health problems during the time of the higher arsenic levels, which he claims included symptoms associated with arsenic poisoning, although no medical professional or test has ever suggested, let alone concluded, that he suffered arsenic poisoning.

Although the Court initially screened Plaintiff's complaint to allow the claims to proceed, it now recommends granting Defendants' motion to dismiss. Based on the motion to dismiss, the Court has made a detailed review of the extraordinary lengthy complaint and exhibits, as well as the decisions of other courts facing this issue. Setting aside conclusory statements, Plaintiff's allegations do not establish that there was a serious risk of harm or deliberate indifference on the part of Defendants by permitting inmates to drink water that contained arsenic levels in excess of regulations while KVSP worked on an arsenic treatment system.

## II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges that he was exposed to inorganic arsenic at KVSP for approximately three years, from 2009 to 2012. KVSP regularly tested the drinking water as required by state and federal regulations. A 2005 consumer confidence report showed that for the year 2005, arsenic exceeded maximum contaminant levels. The report summarized that "some people who drink water containing arsenic in excess of the mcl [maximum contaminant level] over many years could experience skin damage or problems with their circulatory system, and may have an increased risk of getting cancer."

On April 8, 2008, the California Department of Corrections and Rehabilitation ("CDCR") at KVSP released information about inmates' drinking water, noting KVSP has levels of arsenic above the drinking water standard, and above standards issued by the Environmental Protection Agency ("EPA"). The CDCR also noted that some people who drink water containing arsenic in excess of the MCL over many years may experience skin damages or circulatory system problems and may have an increased risk of cancer. It indicated that KVSP had been working to install an arsenic treatment system. The CDCR anticipated resolving the problem by June 2009.

The plan to fix the arsenic in the water was obstructed and further delayed while seeking

Mathew Cate's approval. In the interim, neither the secretary of the CDCR nor the warden, Defendant Biter, approved a safe alternative.

On January 26, 2011, Plaintiff tested positive for Helicobacter Pylori, and was issued various medications. When he was retested in on May 9, 2011, all results were within normal.

On June 17, 2011, Plaintiff's blood was tested, revealing low abnormal results for bun and creatinine ratios.

On June 23, 2011, a doctor noticed Mees' lines on Plaintiff's nails and questioned whether it might be from overtreatment of medication for the H. Pylori disease.

In the meantime, the plans to construct an arsenic treatment plant encountered further delays. On April 1, 2012, Defendant Biter, warden of KVSP, distributed information indicating the KVSP arsenic levels remained above the drinking standard and continued to violate EPA standards.

On April 5, 2012, Plaintiff sought medical attention for severe headache, stomach pain, diarrhea, vomiting, and dark urine. The next day, he was transferred to Mercy Hospital. After evaluation, Plaintiff was transferred to the intensive care unit. He was later diagnosed with cardiomyopathy. He received treatment. Later, Plaintiff's skin began falling off. Plaintiff received treatment and was released back to the general population on April 26, 2012.

On August 16, 2012, Plaintiff sought medical attention for Mees' lines on his nails, "which is physically known for arsenic deposits."

Plaintiff received additional care and learned soon after that his heart issue had resolved.

The next portion of Plaintiff's complaint consists of 19 pages of specific scientific information about arsenic. Plaintiff alleges that arsenic has been a poison since ancient time and is associated with various maladies. Plaintiff lists various ailments identified in various studies of populations exposed to high levels of arsenic. Plaintiff describes a number of tests that can be performed to identify arsenic poisoning, such as blood and urine analysis. Plaintiff also describes various methods to remove arsenic from drinking water. Plaintiff also lists various maladies associated with arsenic, in detailed scientific terms.

Following the complaint are 147 pages of exhibits. These consist of medical records

related to Plaintiff, which discuss the problems listed above. Notably, none of the records indicate that Plaintiff had elevated arsenic levels, or that his medical ailments were caused by arsenic. The exhibits also contain KVSP notices of elevated levels of arsenic, FDA information about the revisions of EPA guidelines and associated FDA regulations for arsenic in drinking water, and information about arsenic poisoning generally from sources such such as Wikipedia.

### III. ARGUMENTS PRESENTED IN MOTION TO DISMISS

#### A. Defendants' Motion to Dismiss

Defendants moved to dismiss on the ground that the exhibits to Plaintiff's complaint reveal that Defendants were not deliberately indifferent to the arsenic in KVSP's water. Moreover, Defendants argue that they are entitled to qualified immunity.

Defendants begin with a recitation of the facts regarding the arsenic issue at KVSP and the prison's response to the issues raised. Defendants cite to a number of notices to inmates that stated that KVSP did not need to use alternative water and that it was not an emergency. (ECF No. 15-1, at p. 7). Defendants describe the efforts to install an arsenic treatment plant, including hiring a contractor and requesting approval from the California Legislature for funding, planning, and construction of the plant. (Id.).

Defendants also describe Plaintiff's alleged ailments over this period, as described in his complaint. Defendants then argue that Plaintiff's exhibits attached to the complaint reveal that the ailments were never connected with arsenic:

> Plaintiff attached a significant number of his medical records to the first amended complaint and none of those documents list the cause of his medical conditions as arsenic or poisoning of any kind. (*Id*. at pp. 65-113.) In fact, On August 16, 2012, Plaintiff submitted a health care request form complaining that he had Mees lines in his finger and toenails and excreting granular substances in his urine that he stated were caused by arsenic poisoning. (*Id*. at p. 107.) However, a health care examination from a registered nurse showed his finger and toenails looked normal and no abnormal lines were noted. (*Id*. at p. 107, 20:2-7.) A September 5, 2012, primary care provider examination confirmed that Plaintiff did not have skin changes due to arsenic poisoning, had healthy normal nails, and did not have arsenic poisoning. (*Id*. at 108.) On January 24, 2013, a doctor ordered a heavy metal test to determine whether there was arsenic present in Plaintiff's body. (*Id*. at p. 110.) Plaintiff's arsenic blood test was normal. (*Id*. at p. 112.)

(ECF No. 15-1, at pgs. 8-9).

4

Defendants also discuss two of Plaintiff's exhibits that contradict Plaintiff's claim that the water at KVSP was dangerous and caused his illnesses. (Id. at p. 9).

Defendants then argue that, based on the exhibits attached to Plaintiff's complaint: (1) KVSP's water did not present a serious risk of harm; (2) Plaintiff did not in fact suffer from any harm from the arsenic; and (3) the CDCR and Defendants were not indifferent to the harm.

Additionally, Defendants argue that they are entitled to qualified immunity because "it would [not] have been clear to a reasonable official that it was unconstitutional to provide water to inmates that is above the maximum contaminant level but that Defendants believed to be non-dangerous."

Defendants cite to a number of cases that, faced with similar issues regarding KVSP's arsenic level, found no Eighth Amendment violation. Some of these cases were dismissed at the screening level, and some were dismissed at summary judgment on the basis that "because the arsenic in KVSP's water was not dangerous and [the defendants] were not aware of a dangerous situation and acted reasonably by installing an arsenic removal plant." (ECF No. 15-1, at p. 17).

**B. Plaintiff's Opposition to Motion to Dismiss**

In his opposition, Plaintiff argues that the attached exhibits do not contradict his pleading regarding the dangerousness of KVSP's arsenic levels. (ECF No. 18). He points to facts including that the EPA changed the maximum contaminant level because studies have shown long-term exposure to arsenic in drinking water may result in multiple ill effects such as cancer. The FDA similarly changed its rules for arsenic in bottled water. Plaintiff argues that Defendants were aware of the EPA standards and risk of harm of non-compliance.

Plaintiff argues that the exhibits support that he suffered from arsenic poisoning. Plaintiff lists a number of medical symptoms, such as "some mottling of the lower extremity and nonpleuritic erythematous rash on the arms, trunk, and lower extremities." (Id. at p. 7). He does not specifically connect these symptoms with any medical findings related to arsenic, but refers generally to the materials listing various symptoms. For example, Plaintiff claims that on April 6, 2012, Plaintiff's skin had some mottling of the lower extremity and nonpleuritic erythematous rash on the arms, trunk, and lower extremities. Some had pustular appearance, which the

5

examiner thought could be early appearance of petechial rash, and on April 7, 2012, Plaintiff's "impression" was cardiogenic shock, acute myocarditis with severe cardiomyopathy, acute renal failure secondary to low cardiac output, ischemic hepatitis, lactic acidosis secondary to low output state.

Regarding white Mees' lines on his nails, which is one indication of arsenic poisoning, Plaintiff states that on August 17, 2012, RN M. Francis acknowledged seeing white lines in Plaintiff's finger and toe nails, although the primary care provider denied seeing such lines. Plaintiff states that no testing was ever done on his nails.

Plaintiff claims that he was never given a specific test to measure arsenic. (Id. at p. 9). Plaintiff alleges that he showed symptoms of arsenic exposure, and refers generally to his complaint.

Plaintiff then reviews the history of the EPA changing its standards, and a notice from KVSP informing inmates that "some people who drink water containing arsenic in excess of the MCL over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer." (Id. at p. 14). He also cites to a consumer confidence report from 2005 reporting that KVSP had exceeded MCL of arsenic in drinking water, and that some people who drink water containing arsenic in excess of the MCL over many years could experience skin damage or problems with their circulatory system, and may have an increased risk of getting cancer. (Id.).

Regarding qualified immunity, Plaintiff cites to various Eighth Amendment law, as well as law holding that exposure to toxic substances can support a claim under section 1983. Plaintiff then recites the facts about knowledge of the changed EPA levels and delays in implementing an arsenic treatment plant. Plaintiff argues that Defendants' conduct was reckless. Plaintiff then argues that Defendants knew of the risk of harm and failed to take action, in violation of settled constitutional law standards.

IV. **LEGAL STANDARDS**

   **A. Legal Standards for Motion to Dismiss**

In considering a motion to dismiss, the court must accept all allegations of material fact in

the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer

possibility that a defendant has acted unlawfully." Id.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### B. Legal Standards for Eighth Amendment Violation

The Eighth Amendment, which protects prisoners from inhumane conditions of confinement, Farmer v. Brennan, 511 U.S. 825, 833 (1994), is violated when prison officials act with deliberate indifference to a substantial risk of harm to an inmate's health or safety. E.g., Farmer, 511 U.S. at 828; Thomas v. Ponder, 611 F.3d 1144, 1151–52 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir.2010).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." Id. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." Id. (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). The exposure to toxic substances can support a claim under section 1983. See Wallis v. Baldwin, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (exposure to asbestos). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

### V.   ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

Although Plaintiff's complaint, which stretches 190 pages including exhibits, includes voluminous facts about each of his medical visits and various studies regarding arsenic health threats generally, Plaintiff's specific allegations regarding the risk of harm by KVSP's water is basically the following:

8

- On January 22, 2001, "the EPA published a final rule establishing a maximum contaminant level for arsenic in public drinking water . . . in part, because studies have shown long-term exposure to inorganic arsenic in drinking water may result in increased risk of cancer (e.g., skin, bladder, lung, kidney, liver, prostate, and nasal passage) and is associated with noncancer effects such as alterations in gastrointestinal, cardiovascular, hematological (e.g., anemia, pulomary, neurological, immunological, and reproductive/developmental function." (ECF No. 9, p. 121).

- In response to the EPA rulemaking, the FDA published a rule on June 9, 2005, that the "allowable level established by FDA for arsenic in bottled water is 10 micrograms (0.010 milligrams) per liter of water." (ECF No. 9, p. 121).

- KVSP released statements, including on April 8, 2008, and April 1, 2012, stating "Kern Valley State Prison has Levels of Arsenic Above the Drinking Water Standard," and explaining "Our water system recently violated a drinking water standard. Although this is not an emergency, you have a right to know what you should do, what happened, and what we are doing to correct this situation. We routinely monitor for the presence of drinking water contaminants. Based on data gathered through monitoring our wells over the last four quarters, the running annual average for wells 1 and 2 is 0.013 mg/L and 0.022 mg/L [*in the 2008 notice, or*] 0.014 mg/L and 0.019 mg/L respectively [*in the 2012 notice*]. This is above the USEPA standard or maximum contaminant level (MCL) of 0.010 mg/L." The notice also stated "You do not need to use an alternative water supply (e.g., bottled water). This is not an emergency. If it had been, you would have been notified immediately. However, some people who drink water containing arsenic in excess of the MCL over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer." (ECF NO. 9, pgs. 50, 64).

- A public health statement from August 2007 states that "If you have arsenic in

> your drinking water at levels higher that [sic] the EPA's MCL, an alternative source of water should be used for drinking and cooking should be considered." (ECF No. 9, at p. 130).

Moreover, taking Plaintiff's allegations as true, Plaintiff exhibits symptoms that could be associated with arsenic poisoning, but he was never diagnosed with arsenic poisoning.

In evaluating this motion to dismiss, in light of the prevalence of this specific complaint by other inmates at KVSP, this Court reviewed decisions of other courts. It is worth noting that the Ninth Circuit has not yet weighed in on this specific issue. Nevertheless, they provide some guidance as to how other courts have evaluated similar allegations against the same legal standards.

Multiple courts have screened out similar allegations from other inmates of KVSP, finding that Plaintiff's allegations do not state a claim under the Eighth Amendment. For example, Magistrate Judge Gary S. Austin found that a similar complaint failed to state a claim for the following reasons:

> Here, Plaintiff fails to allege that he was subjected to an objectively serious harm. The fact that the drinking water exceeded an EPA standard by .02 milligrams per liter does not, of itself, subject Plaintiff to an objectively serious harm. Plaintiff's view that he is in danger of serious physical harm is unsupported by the facts alleged. Plaintiff's own allegations indicated that a professional physician and Master of Public Health tested the water, and found the arsenic levels to be "insignificant." Plaintiff fails to allege any facts indicating that he suffered any ill effects, other than his fear of some future harm. Simply put, the fact that the water violated some regulatory standard does not, of itself, subject officials to liability under the Eighth Amendment.

Huerta v. Biter (E.D. Cal., Mar. 10, 2015, No. 113-CV-00916-AWI-GSA) 2015 WL 1062041, at *4, report and recommendation adopted (E.D. Cal., Oct. 29, 2015, No. 113CV0916AWIEJPPC) 2015 WL 6690042. Magistrate Judge Dennis L. Beck screened out a similar complaint, based on the lack of medical evidence that Plaintiff's health problems were caused by arsenic, and also because it appears that KVSP was in compliance with arsenic regulations at the time of his medical problems. Slaughter v. Biter (E.D. Cal., Dec. 2, 2014, No. 1:14CV00887 DLB PC) 2014

WL 6819501, at *3. See also Ford v. California (E.D. Cal., Apr. 2, 2013, No. 1:10-CV-00696-AWI) 2013 WL 1320807, at *4 ("The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under section 1983 or the Safe Drinking Water Act. Plaintiff's sole claim is that arsenic levels violated regulatory standards. Plaintiff's own exhibits indicate that arsenic levels did not rise to the level of endangering his health. The Court finds that this deficiency cannot be cured by further amendment. Plaintiff has alleged, at most, a violation of regulatory standards.").

Additionally, other courts have allowed similar claims to proceed past the pleading stage, only to grant summary judgment in favor of KVSP based on similar facts, albeit on a more fully developed record than here. For example, Magistrate Judge Sheila K. Oberto recommended granting summary judgment in favor of prison defendants, and District Judge Anthony W. Ishii adopted her recommendation, based on finding that there was no dispute of fact regarding the deliberate indifference claim. In relevant part, the Court explained:

> Plaintiff has not submitted any evidence demonstrating that the exposure to the levels of arsenic in KVSP's water, which ranged between 0.014 and 0.020 mg/L per the six notices posted, for twenty-seven months constituted an objectively serious risk of harm to his health; it is not enough to merely show that the levels exceeded the EPA's new MCL standard of 0.10 mg/L. *Cf. Wallis,* 70 F.3d at 1076 (stating it is uncontroverted that asbestos poses a serious risk to human health and citing statutes in which there was a Congressional finding that medical science has not established any safe minimum level of asbestos exposure) (quotation marks and citations omitted); *Carter,* 2015 WL 4322317, at *8–10 (finding triable issues of fact on objective element of asbestos exposure claim where there was evidence of government findings that medical science has not established any minimum level of exposure to asbestos, but finding no triable issues of fact on objective element of lead paint exposure claim). Regarding Plaintiff's opinion that the water was not safe, Plaintiff is not qualified, as a lay witness, to offer his own opinion that the arsenic levels were sufficiently high to create a substantial risk of serious harm to his health. Although Plaintiff submitted evidence demonstrating that he developed several warts and nodules, there is no evidence linking those growths to arsenic in the water at KVSP. Speculation that Plaintiff's medical conditions *could* be linked to the arsenic levels is not sufficient in the first instance, but here, Plaintiff did not submit any admissible evidence that even speculatively links the two, and he is not qualified to offer his own opinion on the issue, as it requires medical and/or toxicological expertise he does not possess. . . .
>
> Having considered Plaintiff's evidence and arguments, the Court finds that Plaintiff failed to produce any evidence demonstrating that [the] level of arsenic in

11

> KVSP's water presented a substantial risk of serious harm to his health. It is not enough to show merely that the arsenic levels exceeded the new MCL standard; and Plaintiff's inadmissible lay opinion on the matter cannot be used to establish that the water presented an objective risk of serious harm to his health as a matter of law. Plaintiff also failed to produce any evidence "that the risk of which he complains is not one that today's society chooses to tolerate." *Helling,* 509 U.S. at 35–36.

Nguyen v. Biter (E.D. Cal., Sept. 8, 2015, No. 1:11-CV-00809-AWI) 2015 WL 5232163, at *8–9.

The Court also sided with the prison defendant on the issue of deliberate indifference, explaining:

> Next, Plaintiff fails to make the requisite showing as to the subjective element of deliberate indifference. Plaintiff has shown that Defendant signed six notices regarding arsenic levels in KVSP's water exceeding the EPA's MCL standard but he has not demonstrated that Defendant knowingly disregarded a substantial risk of harm to his health. Bare knowledge of the fact that the arsenic levels were above the EPA's MCL standard is not sufficient. Indeed, the notices signed by Defendant disclaimed any emergency situation or a need to use alternative water sources, such as bottled water. Plaintiff's opinions that the water was dangerous and that Defendant knew it was dangerous but failed to take additional protective measures do not constitute admissible evidence supporting a finding of deliberate indifference. Further, there is no competent evidence that the elevated levels were dangerously high and constituted an obvious health risk. *Farmer,* 511 U.S. at 842; *Foster,* 554 F.3d at 814.

(Id. at *9).

Magistrate Judge Michael J. Seng reached the same conclusion in recommending granting Defendants' motion for summary judgment, which was subsequently adopted by District Judge Anthony W. Ishii, including the following analysis:

> The real issues in dispute here are whether the levels of arsenic (whether organic, inorganic, or a combination of the two) actually found in KVSP's drinking water and consumed by Plaintiff were dangerous and whether Plaintiff's health problems can be attributed to the arsenic. Rather than submit admissible evidence on either of these issues, Plaintiff makes conclusory statements that are not based on personal experience or professional expertise. Moreover, Plaintiff's lay opinion as to the cause of his symptoms is speculative and inconsistent with the qualified opinions from Dr. Geller. And, finally, Plaintiff's emotional distress related to a fear of future harm cannot serve as the basis of an Eighth Amendment claim absent a showing of physical injury. Plaintiff has simply failed to submit any competent evidence that his symptoms are related to arsenic consumption.
>
> Even assuming, *arguendo,* that Plaintiff had established that the levels of arsenic detected in KVSP's water were sufficiently serious to satisfy the Eighth Amendment's first prong and that he was harmed by it, there is no showing of deliberate indifference. Although Defendant was aware that the level of arsenic in

12

> prison water exceeded federal standards, the evidence does not suggests he knew of, and disregarded, a risk that consumption of that water posed a serious threat to inmate health. Rather, the undisputed facts establish that Defendant reasonably inquired of and relied upon on the medical expertise of KVSP's CME, Dr. Lopez, who in turn relied on the expert opinion of Dr. Geller, that the water was safe to drink. Indeed, Defendant himself drank the water. There is no deliberate indifference on these facts.
>
> Having thus examined the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's entire case rests upon his speculation about the type of arsenic found in KVSP's drinking wells, the dangers of the arsenic-contaminated water at the levels found at KVSP, and the cause of his symptoms.

Johnson v. Cate (E.D. Cal., Sept. 10, 2015, No. 1:10-CV-00803-AWI) 2015 WL 5321784, at *11 (footnote omitted).

While recognizing that the standard at the motion to dismiss stage is different from summary judgment, this Court recommends granting Defendants' motion to dismiss in this case for reasons similar to those expressed by the above courts faced with similar facts. Although Plaintiff's complaint contains 190 pages of allegations and exhibits, it ultimately lack factual allegations that the arsenic in the water at KVSP posed a serious risk of harm or that Defendants acted with deliberate indifference in addressing that risk. Although levels exceeded the revised EPA standards for a certain amount of time, there is no evidence that the levels in KVSP's water posed a serious risk of harm. Merely being above standards is insufficient to establish such a serious risk of harm. Plaintiff's allegations regarding his own medical ailments fail to satisfy this element because they lack the critical link from any test or medical professional that Plaintiff suffered from an elevated arsenic level, or that any of his medical issues were associated with arsenic poisoning.

Moreover, there is no evidence of deliberate indifference on the part of defendants. Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety, and there are no non-conclusory allegations showing that Defendants knew of and disregarded an excessive risk to inmate health. In fact, the notices provided by Plaintiff seem to indicate that prison officials did not believe that the elevated levels of arsenic posed an excessive risk. The notices do mention a potential risk if the exposure is long term, but, possibly in an attempt to mitigate this risk, a treatment plant was eventually installed. This may

have taken longer than Plaintiff would have liked, but it was ultimately completed. Additionally, there are no factual allegations establishing that the delay was due to any decision by any individual that deliberately ignored a serious risk to inmate health.

Given the Court's conclusion above, the Court need not address Defendants' argument regarding qualified immunity.

### VI.   CONCLUSION AND RECOMMENDATIONS

Therefore, Defendants' motion to dismiss should be granted in full.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1) Defendants' motion to dismiss be granted in full;

2) The case be dismissed with prejudice; and

3) The Clerk of Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 14, 2016**         /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE