| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| SILUS M. VALSON,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW CATE and MARTIN BITER,<br><br>Defendants. | Case No. 1:14-cv-01420-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF BE DENIED, WITHOUT PREJUDICE TO PLAINTIFF FILING A SEPARATE ACTION BASED ON HIS CLAIMS OF RETALIATION AND SEEKING INJUNCTIVE RELIEF IN THAT CASE<br><br>(ECF NO. 39)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Silus M. Valson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on his First Amended Complaint (ECF No. 9), which asserts a claim for violation of the Eighth Amendment against defendants Matthew Cate and Marin Biter ("Defendants") based on knowingly providing Plaintiff with water containing elevated levels of arsenic.

On May 24, 2018, Plaintiff filed a motion for injunctive relief ("the Motion"). (ECF No. 39). On June 22, 2018, Defendants filed their opposition to the motion. (ECF No. 44).

For the reasons described below, the Court recommends denying Plaintiff's motion for injunctive relief.

**I. THE MOTION**

Plaintiff seeks an injunction to prevent defendant Biter and CSR from using the

1

classification process to transfer Plaintiff consistent with his classification score, and an order that prevents Prison Industry Authority and California Department of Corrections and Rehabilitation staff from harming Plaintiff in building and developing his skills and employment at Prison Industry Authority's milk processing at California State Prison, Corcoran.

Plaintiff alleges that on October 10, 2016, he had a consultation with a Deputy Commissioner with the Board of Parole Hearings. So that Plaintiff could become ready for parole, the Deputy Commissioner recommended, among other things, that Plaintiff "maintain employment as available and earn satisfactory or above work reports." (ECF No. 39, p. 6). Maintaining employment can show to the Board that Plaintiff has sufficiently developed a marketable skill that can be used upon his release. This (and making further development in achieving his sampler and weigher's license while doing so) indicates that Plaintiff could live a stable and fully functional life upon release on parole.

Plaintiff arrived at California State Prison, Corcoran ("CSPC"), on September 8, 2017. Plaintiff was transferred to CSPC Level IV General Population. On or about September 27, 2017, he was assigned full time to a work/training assignment with Prison Industry Authority ("PIA") milk processing. Plaintiff was originally a dock worker, but on February 1, 2018, he was "enhanced" to the duties of pasteurizer. He was also given a study guide for a limited pasteurizing and general pasteurizing license, in preparation for his examination with the California Department of Food and Agriculture. On April 20, 2018, Plaintiff took the examination and passed, thus becoming legally able to operate a pasteurizing unit. A licensed pasteurizer is listed as a special skill in the Department Operations Manual.

Prior to passing his exam, Plaintiff mentioned to his PIA supervisor and a member of the PIA administrative that he would like to remain at CSPC to continue his work as an employee of PIA and to obtain his sampler/weigher license, while being active in more TPC training.

While Plaintiff is legally able to operate a pasteurizing unit, he has not yet had sufficient opportunity to fully operate one so as to gain the experience needed to maintain employment upon his release on parole (Plaintiff's initial Youth Offender Parole Hearing is scheduled for December 31, 2021).

Plaintiff's next Classification Committee review (which can determine what institution/facility he is placed in) will be held on or around July 14, 2018. The Classification Committee, under the Warden's direction, can recommend transfer of inmates. If defendant Biter (who became warden of CSPC in February or March of 2018) is allowed to harm Plaintiff for pursuing this action by making his transfer recommendations consistent only with Plaintiff's classification score and not the needs of Plaintiff to attain experience in work related skills, Plaintiff will suffer irreparable injury because he will not be able to continue participating in his current rehabilitative activities.

In January of 2018, Plaintiff worked a total of 236 hours because he was placed on the overtime list (the average without being placed on the overtime list is approximately 150 hours). "As defendant Biter began his takeover" of CSPC as Warden, Plaintiff's total hours worked in the month of February were cut to 175, and he was removed from the overtime list without notification. (Id. at 10-11). PIA supervisors must submit a request to the Warden every two weeks to allow inmates to work overtime.

By April of 2018, Plaintiff was only allowed to work 114 hours. Even on days when he is listed as a critical worker for his crew, and even though he is an inmate with a special skill, he is not allowed to work his routinely assigned days of work.

Near the end of April 2018, Plaintiff overheard a conversation between PIA staff, in which one stated that "Warden wants [Plaintiff] gone, he suing [sic] us." (Id. at 12).

Correctional staff admitted to Plaintiff that they are part of the influence that hinders him from participating on the days he is assigned to work.

Prior to February of 2018, Plaintiff notified his direct supervisor that he would like to be allowed to develop his skills past his next annual classification review, and his supervisor was open to sending a letter to his correctional counselor to allow Plaintiff to continue participating in milk processing at CSPC, even though, based on Plaintiff's classification score, he would be eligible for a level 3 prison.

Plaintiff's current employment provides Plaintiff with a unique opportunity to establish at his Youth Offender Parole hearing that he has matured, and that public safety does not require

that he serve an additional period of incarceration. This opportunity is not likely to be adequately available at a later date in the course of this action.

## II.   DEFENDANTS' OPPOSITION

Defendants' argue that Plaintiff's motion for injunctive relief should be denied because it is completely unrelated to the claims in this case, because neither defendant currently works at CSPC (or at the California Department of Corrections and Rehabilitation), because Plaintiff's requested relief goes beyond what is allowed under the Prison Litigation Reform Act, and because Plaintiff has not established that he is entitled to injunctive relief.

## III.   LEGAL STANDARDS

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. See, e.g., Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1916); Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir. 1983); see also Califano v. Yamasaki, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."

On the merits, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest." Glossip v. Gross, 135 S. Ct. 2726, 2736-37 (2015) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. ANALYSIS

The Court will recommend that the Motion be denied. Defendants are correct that the Motion is unrelated to this case. This case involves arsenic in the drinking water at Kern Valley State Prison. Plaintiff's injunction requests involve the potential loss of his employment at CSPC due to a possible transfer and the loss of hours at his job. Plaintiff alleges that the possible transfer and the loss of hours are the result of retaliation against Plaintiff for pursuing this action. "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015). As Plaintiff appears to be basing his injunction request on a claim of retaliation that was not pled in the First Amended Complaint, the Motion should be denied. This denial should be without prejudice to Plaintiff filing a separate action based on his claims of retaliation and seeking injunctive relief in that case.

Additionally, the Court finds that at least part of Plaintiff's injunctive relief request is now moot. Defendants have presented evidence that defendant Biter is no longer the warden at CSPC, and is retired. (ECF No. 44, p. 5). As one of Plaintiff's injunctive relief requests was directed at stopping defendant Biter from transferring him to a different institution at his upcoming Classification Committee hearing, the Court finds this request to be moot.

## V. RECOMMENDATION

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for injunctive relief be DENIED, without prejudice to Plaintiff filing a separate action based on his claims of retaliation and seeking injunctive relief in that case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 6, 2018**          /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE