| | |
|---|---|
| SILUS M. VALSON,<br><br>           Plaintiff,<br><br>   v.<br><br>MATTHEW CATES, et al.,<br><br>           Defendants. | Case No. 1:14-cv-01420-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS BE GRANTED AND THE CASE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 53)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS** |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

Before the Court is Defendants' Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. (ECF No. 53.) Plaintiff, Silus M. Valson, previously filed a case in state court raising the same underlying claims he raises in the present case. That state court case was dismissed without leave to amend. As a result, the present case is barred under the doctrine of *res judicata*. Accordingly, the undersigned recommends that Defendants' motion for judgment on the pleadings be granted and this case be dismissed with prejudice

## I. BACKGROUND

Silus M. Valson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Valson is proceeding on his First Amended Complaint ("FAC"). (ECF No. 9.) The FAC asserts a claim for violation of the Eighth Amendment against Defendants Matthew Cate and Marin Biter ("Defendants") for knowingly providing Valson and other prisoners with water containing elevated levels of arsenic.

1

This case is one of many filed by inmates of Kern Valley State Prison ("KVSP") following announcements that KVSP's water tested for higher levels of arsenic than permitted by the Environmental Protection Agency ("EPA") under the EPA's revision to permissible levels issued in 2001. Although KVSP took steps to treat the water, there were several years where the arsenic levels exceeded the revised EPA standards. Valson suffered health problems during the time of the higher arsenic levels, which he claims included symptoms associated with arsenic poisoning.

On August 5, 2016, Defendants filed a motion to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) The district court denied the motion, finding that the allegations of the FAC are sufficient to state a claim for relief under the applicable pleading standard. (ECF No. 22.)

On September 21, 2018, Defendants filed the pending motion to dismiss on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF No. 53.) Defendants contend that Valson is attempting to relitigate a claim that he already litigated in California state court and that his claims are accordingly barred under the doctrine of *res judicata*.

## II. REQUESTS FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of court records from a case Valson initiated in the Kern County Superior Court. (ECF No. 54 and exhibits A, B, and C attached thereto; ECF No. 70 and exhibits D, E, F, G, H, and I attached thereto.)

Under Federal Rule of Evidence 201(b) the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Court finds that judicial notice of the state court case records provided by Defendant is proper under Fed. R. Evid. 201(b)(2) and (c)(2). Accordingly, the Court grants Defendants' requests for judicial notice (ECF Nos. 54, 70).

///

### III. BACKGROUND

  A.  <u>Summary of Valson's First Amended Complaint in the Present Case</u>[1]

  Valson alleges that he was exposed to inorganic arsenic at KVSP for approximately three years, from 2009 to 2012. KVSP regularly tested the drinking water as required by state and federal regulations. A 2005 consumer confidence report showed that for the year 2005, arsenic exceeded maximum contaminant levels. The report summarized that "some people who drink water containing arsenic in excess of the mcl [maximum contaminant level] over many years could experience skin damage or problems with their circulatory system, and may have an increased risk of getting cancer."

  On April 8, 2008, the California Department of Corrections and Rehabilitation ("CDCR") at KVSP released information about inmates' drinking water, noting KVSP has levels of arsenic above the drinking water standard, and above standards issued by the EPA. CDCR also noted that some people who drink water containing arsenic in excess of the MCL over many years may experience skin damage or circulatory system problems and may have an increased risk of cancer. CDCR indicated that KVSP had been working to install an arsenic treatment system, and CDCR anticipated resolving the problem by June 2009.

  The plan to fix the arsenic in the water was obstructed and further delayed while seeking Mathew Cate's approval. In the interim, neither the secretary of the CDCR nor the warden, Defendant Biter, approved a safe alternative.

  On January 26, 2011, Valson tested positive for Helicobacter Pylori, and was issued various medications. When he was retested in on May 9, 2011, all results were within normal. On June 17, 2011, Valson's blood was tested, revealing low abnormal results for bun and creatinine ratios. On June 23, 2011, a doctor noticed Mees' lines on Valson's nails and questioned whether it might be from overtreatment of medication for the H. Pylori disease.

  In the meantime, the plans to construct an arsenic treatment plant encountered further delays. On April 1, 2012, Defendant Biter, warden of KVSP, distributed information indicating the KVSP arsenic levels remained above the drinking standard and continued to violate EPA

---

[1] This section is based on the allegations in Valson's First Amended Complaint (ECF No. 9), which are assumed to be true for purposes of addressing Defendants' motion for judgment on the pleadings.

3

standards.

On April 5, 2012, Valson sought medical attention for severe headache, stomach pain, diarrhea, vomiting, and dark urine. The next day, he was transferred to Mercy Hospital. After evaluation, Valson was transferred to the intensive care unit. He was later diagnosed with cardiomyopathy. He received treatment. Later, Valson's skin began falling off. Valson received treatment and was released back to the general population on April 26, 2012.

On August 16, 2012, Valson sought medical attention for Mees' lines on his nails, "which is physically known for arsenic deposits." Valson received additional care and learned soon after that his heart issue had resolved.

B. Summary of State Court Case Proceedings

Valson filed the state court case in Kern County Superior Court on July 24, 2013. (ECF No. 70 at 6.) Valson named as defendants the State of California, the California Department of Corrections and Rehabilitation ("CDCR"), the California Prison Health Care Service, Kern Valley State Prison, and Ismail Patel. Valson alleged:

> On April 5, 2012, while under the custody of the California Department of Correction and Rehabilitation (CDCR) at Kern Valley State prison (KVSP), Plaintiff [was injured due to] bad living condition[s], at KVSP, amounting to a serious deprivation of minimal civilized measures of life necessities, where "arsenic" level[s] were above standards of "Maximum Contaminant Level" (MCL), governed by the Environmental Protection Agency (EPA). Plaintiff arrived at KVSP October 2009 engulfed by contaminated water of "Arsenic," through KVSP water wells. . . . [Defendants], with notice of EPA standards for "Arsenic" in drinking water, failed to properly [protect Plaintiff from, and provide medical care for Plaintiff to prevent injury from] "Arsenic," exposure.

(ECF No. 54 at 9, 10-12.) Valson alleged that he was injured as result of being exposed to the elevated levels of arsenic. (ECF No. 54 at 13-17.)

The defendants in the state case filed a demurrer, which the Kern County Superior Court sustained without leave to amend. (ECF No. 54 at 18-19; ECF No. 70 at 38-39.) The superior court found Valson's state claims to be barred because Valson failed to comply with the California Government Claims Act. (*Ibid.*) As to Valson's federal civil rights claims, the Court found:

> The remaining causes of action appear to fall under the ambit of federal civil rights claims under 42 U.S.C. section 1983, for which no claim [under the Government Claims Act] is

4

| | |
|---|---|
| 1 | required. However, the defendants are the State of California and agencies thereof. These entities are immune from suit. |
| 2 | (ECF No. 70 at 38.) The state superior court sustained the defendants' demurrer without leave to |
| 3 | amend and dismissed the case. (ECF No. 54 at 18-19.) |
| 4 | Valson filed four separate motions for relief from the judgment, all of which were denied |
| 5 | by the superior court. Valson then appealed to the California Court of Appeal for the Fifth |
| 6 | Appellate District. The Court of Appeal affirmed the superior court's dismissal in an opinion filed |
| 7 | on October 17, 2016. (ECF No. 54 at 24-31.) |

### IV. LEGAL STANDARD FOR MOTION TO DISMISS ON THE PLEADINGS

In reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

### V. DISCUSSION

The issue before the Court is whether the present case is barred under the doctrine of *res judicata* as a result of the dismissal, without leave to amend, of Valson's state court case. As discussed below, the requirements for application of *res judicata* are met here: (1) Valson's claim in the state case and his claim in the present case are identical; (2) Valson's state court proceeding resulted in a final judgment on the merits; and (3) Valson was the plaintiff in the state court case and thus, the "party against whom the doctrine is being asserted" was a party in the prior proceeding. Accordingly, the present action is barred under the doctrine of *res judicata* and defendants' motion for judgment on the pleadings should be granted.

    A.    <u>Doctrine of *Res Judicata*</u>

Federal courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982); *see* 28 U.S.C. § 1738. Thus, this Court will apply California law to determine the preclusive effect of the state court judgment against Valson.

*Moldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004); *see Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993).

Under California law, *res judicata* forecloses relitigation if "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Pitzen v. Superior Court*, 120 Cal. App. 4th 1374, 1381 (2004) (citation omitted); *see Victa v. Merle Norman Cosmetics, Inc.*, 24 Cal. Rptr. 2d 117, 120 (Ct. App. 1993) (*res judicata* "foreclose[s] relitigation of a cause of action or issue that was determined in a prior case, involving the same party or one in privity to it, and which ended in a final judgment on the merits"); *McKinney v. Cty. of Santa Clara*, 168 Cal. Rptr. 89, 92 (Ct. App. 1980) (*res judicata* "precludes parties and their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction").

B. Analysis

1. *The State Case and the Present Case Involve the Same Claim*

Valson does not dispute that the underlying claim raised in the present case is identical to the claim he raised in his state court case. He characterizes the present case as suing "for allowing him to be exposed to dangerous levels of arsenic in Kern Valley's drinking water and failing to prevent him from being harmed." (ECF No. 56 at 1.) He characterizes his state court case as alleging that the defendants he named in that case (the State, CDCR, KVSP, CCHS, and Patel) "allowed him to be exposed to arsenic in Kern Valley's water supply and did not act to prevent him from suffering harm[]." (*Id.* at 2.) Indeed, Valson states that the FAC in the present case "is simply a new pleading to correct the technical or formal defects of the pleading . . . of the state court." (*Id.* at 3.)

Valson argues, however, that his claim in the present case is not barred by *res judicata*. In support of his argument he points out that in the state court case he was suing certain specific defendants—the State of California, CDCR, CCHS, KVSP, and Ismail Patel. In contrast, in the present case, he is suing different defendants—Defendants Cates and Biter—and is suing them in

6

their individual rather than their official capacities. Valson argues that because the state court sustained the demurrer as to his federal claims based on Eleventh Amendment immunity, and the Eleventh Amendment does not apply to his claims against Defendants Cates and Biter, *res judicata* does not preclude the present action. The Court disagrees.

For purposes of *res judicata*, California applies the "primary rights" theory. Under this theory, "[i]f the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226, 1233 (9th Cir. 2014) (quoting *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612, 614 (Ct. App. 1983)) (internal quotation marks omitted)). "'[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.'" *Id.* (quoting *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010)).

In both the state case and the present case, Valson is raising the same "primary right," i.e., the right to not be exposed to and harmed by dangerous levels of arsenic in KVSP's drinking water, and the resulting harm suffered due to exposure to dangerous levels of arsenic in the drinking water. Under California's primary rights theory, both the claims Valson actually raised in the state case, and those claims that he could have raised—including his § 1983 claims against Defendants Cates and Biter in their individual capacity—are precluded if there is a final judgment on the merits in the state case and the privity requirement for application of *res judicata* is met. *See id.*; *see also Edmonson v. City of Martinez*, 2000 WL 1639492, at *1-3 (N.D. Cal. 2000), *aff'd*, 17 F. App'x 678 (9th Cir. 2001) (claims in federal lawsuit precluded under *res judicata* because claims "could have been raised" in previous state lawsuit in which demurrer to federal and state claims were sustained without leave to amend).

### 2. *The Prior Case Resulted in a Final Judgment on the Merits*

The state case was dismissed for failure to present a timely tort claim as required by the California Government Claims Act ("GCA"). (ECF No. 54 at 18-19, 24-31.) Further, the state court sustained the demurrer as to the entire action, including both the state claims and the federal

7

claims. (*See id.*; ECF No. 70 at 22.) As to the federal claims, the state court held: "The remaining causes of action appear to fall under the ambit of federal civil rights claims under 42 U.S.C. Section 1983, for which no claim is required. However, the defendants are the State of California and agencies thereof. These entities are immune from suit." (ECF No. 70 at 22-23, 38.)

The state court judgment sustaining the general demurrer without leave to amend is a final judgment on the merits. *See McKinney*, 168 Cal. Rptr. at 92 (judgment on a general demurrer dismissing a case for failure to comply with the GCA is a final judgment on the merits); *Yee v. Select Portfolio, Inc.*, No. 18-CV-02704-LHK, 2018 WL 4772341, at *5 (N.D. Cal. Oct. 1, 2018) (order sustaining defendant's general demurrer without leave to amend is a final judgment on the merits).

Valson argues, however, that the state court judgment was not a "final judgment on the merits" as to his federal claims because the dismissal of those claims was based on a defect that could be remedied by naming different defendants. In support of his argument, Valson cites *Palomar Mobilehome Park*, 989 F.2d 362 (9th Cir. 1993), and *Perez v. Roe*, 52 Cal. Rptr. 3d 762 (Ct. App. 2006).

In *Palomar*, the Ninth Circuit found a federal action to be barred under the doctrine of *res judicata* by a prior state court action. 989 F.2d at 365. The Ninth Circuit rejected the plaintiff's argument that its federal claims were not barred because it did not raise its federal claims in the state case, explaining:

> It is well settled that *res judicata* bars subsequent actions on all grounds for recovery that could have been asserted, whether they were or not. A litigant cannot avoid the preclusive effect of *res judicata* by failing explicitly to plead federal constitutional violations in a prior state action. While every litigant deserves his or her day in court, few deserve two. Thus, Palomar's failure specifically to plead federal constitutional violations in the state court complaint does not affect the application of *res judicata* to this case.

*Palomar Mobilehome Park*, 989 F.2d at 365.

Under *Palomar*, both the claims Valson actually brought in the state court case and the claims he could have brought are barred. Valson could have brought his claims against Defendants Cate and Biter in the state court case. Accordingly, under *Palomar*, the claims against Defendants Cate and Biter are barred even though they were not brought in the state court case. *See id.*

Plaintiff also relies on *Perez*, 52 Cal. Rptr. 3d 762. In *Perez*, the court noted that, under California law, "a civil judgment based solely on the statute of limitations is not on the merits and that if new facts may be pleaded to cure the defect, the prior judgment will not bar a new action." *Id.* at 771. In the present case, unlike *Perez*, the defect in Valson's previous state case was not a statute of limitations bar. Rather, the defect in Valson's previous state case (as to the federal claims) was that the defendants named by Valson were immune from suit. Thus, the holding of *Perez* is inapplicable.

Valson also argues that the state judgment is not a final judgment on the merits as to his claims in the present case because the defendants in the present case are different than the defendants he named in the state case. The Court disagrees.

As the California Supreme Court stated in 1942, "There is no compelling reason, however, for requiring that the party asserting the plea of *res judicata* must have been a party, or in privity with a party, to the earlier litigation." *Bernhard v. Bank of America*, 122 P.2d 892, 894 (Cal. 1942). It is enough if, as here, the defendants in the present case are employees of the defendants in the previous state case. *See id.*; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (affirming the application of *res judicata* in a case where "[d]ifferent individuals [we]re named defendants in the two suits" because "all [we]re employees of the FCC who participated in the" challenged conduct that led to the alleged injury); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) ("Although the two actions name different federal defendants, '[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.'") (citations omitted)).

Defendants rely on *Pickering v. Enenmoh*, 722 F. App'x 695 (9th Cir. 2018), in support of their motion for judgment on the pleadings. In *Pickering*, the Ninth Circuit affirmed, in an unpublished decision, a dismissal based on *res judicata* in a case that is procedurally similar to the present case. In *Pickering*, like here, the plaintiff had previously filed a case in state court, and the state court sustained a demurrer without leave to amend for failure to present a claim as required under the California Government Claims Act. *Id.* at 696. Also, in *Pickering*, like here,

9

the plaintiff brought federal claims in the state action which were also dismissed without leave to amend. *See Pickering v. Enenmoh*, E.D. Cal. Case No. 11-cv-00937, ECF No. 64-3. *Pickering*, however, differs from the present case in one aspect that is relevant to the arguments raised by Valson. In *Pickering*, the state court dismissed the federal claim because it was barred by the statute of limitations—a defect that could not be cured in that case through amendment. In contrast, here, the state court dismissal of the federal claims was based on the immunity of the named defendants—a defect that could potentially have been remedied *in the state court case* through amendment to name defendants who were not protected by sovereign immunity. This distinction does not, however, assist Valson in the present case because his remedy was to seek leave to amend in the state case—not to file a new lawsuit in federal court.

Valson could and should have sought to remedy the defect in his state case by seeking leave *in the state case* to amend his complaint to add the defendants he now seeks to sue in this federal case. Valson also could have argued before the state superior court and on appeal from the state superior court's dismissal that the dismissal of the state case without leave to amend was improper. *See Zelig v. Cty. of Los Angeles*, 45 P.3d 1171, 1180–81 (Cal. 2002) (when demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse"). Valson did neither.

Nevertheless, even if the state court's dismissal without leave to amend was erroneous, the state court's judgment is still a final judgment on the merits for purposes of *res judicata* because "[a]n erroneous judgment is as conclusive as a correct one." *Panos v. Great Western Packing Co*. 134 P.2d 242 (Cal. 1943); *see Proctor v. Vishay Intertechnology, Inc.*, 152 Cal. Rptr. 3d 914, 923 (Ct. App. 2013) ("In passing upon the plea of *res judicata*, the question is not whether a court decided the point involved right or wrong... the question is, Did the court decide the point and is the decision final? By failing to appeal and seek a correction of the error through a reversal of the judgment, it is as conclusive upon the plaintiff as if at the trial he had omitted to present sufficient evidence to the court in support of his demand." (internal quotation marks omitted) (quoting *Lamb v. Wahlenmaier*, 77 P. 765 (Cal. 1904).)

In sum, the state court's sustaining of the demurrer without leave to amend is a final judgment on the merits as to the claims Valson seeks to bring in the present case, and as to the defendants he names in the present case.

### 3. *Valson was a Party in the Prior Case*

Valson does not dispute that he was also the plaintiff in the state case. Accordingly, the requirement that the party against whom *res judicata* is being applied—in this case, Valson—be a party to, or in privity with a party to, the prior adjudication, is fulfilled. *See McKinney*, 168 Cal. Rptr. at 92; *see also Bernhard*, 122 P.2d at 894 ("There is no compelling reason, however, for requiring that the party asserting the plea of *res judicata* must have been a party, or in privity with a party, to the earlier litigation.").

## VI. CONCLUSION AND RECOMMENDATIONS

Valson's present action involves the same claim or primary right as he raised in the state court action, the state court action resulted in a final judgment on the merits, and Valson was a party to the state court action. Under California law, the present action is therefore precluded under the doctrine of *res judicata*.[2]

Accordingly, based on the foregoing, IT IS RECOMMENDED that:

1. Defendants' requests for judicial notice (ECF No. 54, 69) be granted;
2. Defendants' motion for judgment on the pleadings (ECF No. 53) be granted;
3. The case be dismissed with prejudice;
4. All other pending motions and requests, including Valson's motion for summary judgment (ECF No. 63) and requests for judicial notice (ECF Nos. 38, 41), be denied as moot; and
5. The Clerk of Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any

---

[2] In reaching its conclusion, the Court has reviewed and considered all arguments raised by Valson, including the information provided by Valson in his request for submission of omitted statements (ECF No. 67).

11

party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 18, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE